No. 85-631

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

FELTON INVESTMENT GROUP,

        Plaintiff and Appellant,

   -vs-

WAYNE E. TAURMAN, DERROLD O. PAIGE,

        Defendants and Respondents.

-----------------------------

WAYNE E. TAURMAN and DERROLD O. PAIGE,

        Plaintiffs and Respondents,

   -vs-

FELTON INVESTMENT GROUP,

        Defendant and Appellant.

_____

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Jack L. Green, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Boone, Karlberg & Haddon; Sam E. Haddon, Missoula,
        Montana

    For Respondent:

        Datsopoulos, MacDonald & Lind; William K. VanCanagan,
        Missoula, Montana

_____

Submitted on Briefs: April 17, 1986

Decided: July 9, 1986

Filed: JUL 9 - 1986

*Ethel M. Harrison*
_____
Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

Felton Investment Group (FIG) appeals the August 20, 1985, order of the Fourth Judicial District Court, County of Missoula, holding that Wayne Taurman (Taurman), and Derrold Paige (Paige) are entitled to receive their pro rata shares of the fair market value of the assets of FIG as of the date their employment with Felton Construction Company (FCC) ended. We affirm.

John Felton is the originator and president of FCC. In 1969 he formed FIG. The purpose of FIG is to provide retirement benefits to certain deserving employees of FCC. Each member of FIG makes weekly contributions which are automatically deducted from the paycheck. The money is then combined and invested. The partners must all agree on the investments to be made.

Initially, FIG was operated as a general partnership, with the only guidelines contained in oral agreements. The October 28, 1969, "Pre-Incorporation Minutes" was the first written document reflecting the purpose behind and terms of FIG. Those minutes state in pertinent part:

ADMITTANCE: Resolved that admittance is available to anyone employed by Felton Construction Company . . .

EMPLOYMENT: . . .

Resolved that if a member ceases employment or is discharged for misconduct, his interest shall be returned in an amount equal to contributions paid into the fund plus 4% simple interest; that the Group shall have a period of one year in which to purchase the stock of such member.

Resolved that involuntary termination caused by disability, death, or retirement shall not affect such member's interest.

Taurman was a charter member of FIG. Paige joined in 1970. They participated in FIG's annual meetings and gave

2

their approval to all decisions until 1974. At that time Felton proposed changing FIG into a limited partnership with Felton as the general and controlling partner. Several of the other partners expressed dissatisfaction with the potential loss of control over their assets. At Felton's suggestion, they discussed the situation with an attorney who advised the partners not to enter into a limited partnership. Taurman and Paige informed Felton that they did not approve of his plan and would not agree to form a limited partnership.

Felton continued developing his limited partnership concept. FIG continued as a general partnership. Annual meetings were held. Minutes were taken and copies sent to each partner. A summary of resolutions adopted through 1974 included the following:

> 7. In the event of termination of employment, except temporary layoff, for a period of 2 weeks, the Group shall vote to eject such persons from membership.
>
> 8. If a member ceases employment or is discharged for misconduct, his interest shall be returned in an amount equal to contributions paid into the fund plus 4 ½% annual interest.

In December of 1977, Felton presented a proposed limited partnership agreement to the partners for their discussion and comment. A proposed draft was accepted, as revised, and was subsequently given to an attorney for preparation of a preliminary draft. The attorney presented the preliminary draft at the December 1979 meeting.

In the interim, on December 5, 1978, Paige determined his investment in FIG to be in jeopardy due to the proposed limited partnership agreement and ceased contributing to the fund. However, he continued to be employed by FCC until July of 1980. Paige believed himself to still be a member of FIG because he was still employed by FCC. Approximately one year

after ceasing to contribute to FIG, Paige received a check from FIG reflecting his contributions to date and interest, $15,040.08. Not wishing to lose his rights in the partnership, Paige refused to endorse and cash the check.

Taurman continued investing in FIG until July of 1980. At that time, he was employed by FCC in Sunburst, Montana. Taurman was told by Felton that once the Sunburst job was completed, there would be a job for him in Aberdeen, Washington. However, FCC had decided to go non-union and the job in Aberdeen was for non-union personnel. Union members would be fined $5,000 by their union for working a non-union project. After considering the choices overnight, Taurman told Felton he would not be quitting the union. Taurman's employment with FCC terminated a week or two later.

Paige was presented with the same decision. He, too, decided to remain union and lost his job with FCC.

Subsequent to Taurman's and Paige's terminations, a meeting of FIG was held and its members voted to expel Taurman from the group. Following his expulsion, Taurman was offered a check by FIG in an amount equal to his contribution plus interest, $21,448.98. Taurman refused to endorse and cash the check.

FIG filed a complaint December 2, 1981, requesting that Taurman, Paige, and a third individual, Thomas Wackler, be ordered to accept the sums previously offered in satisfaction of their entire claims in the partnership. Also on December 2, 1981, Taurman and Paige filed a complaint against FIG seeking the judicial dissolution of FIG; a formal accounting of FIG; and an order that the assets of FIG be sold, applied in full to partnership liabilities and the remainder divided between the partners. Following a bench trial, judgment was

4

entered for Taurman and Paige, awarding them a pro rata share in the partnership's assets.

FIG appeals, raising the following issues:

1. Did the District Court err in adopting verbatim findings of fact and conclusions of law proposed by Taurman and Paige which were unsupported by the record, inconsistent with the evidence and contrary to stipulations of the parties?

2. Did the District Court err in basing its decision upon an alleged violation of the National Labor Relations Act by a non-party to the litigation the subject matter of which was beyond the jurisdiction of the court to pass upon and further was barred by the applicable federal statute of limitations?

3. Did the District Court err in holding that the provisions of the Uniform Partnership Act applicable to intra se relationships of partners in an ongoing partnership, § 35-10-401, MCA, controlled a case which involved partnership dissolution and the rights of the partnership and the former partners upon such dissolution?

The District Court did not adopt Taurman's and Paige's findings of fact and conclusions of law completely verbatim. The judge's editing of the findings and his selective use of the conclusions, as well as his reliance on his own conclusions, evidence "the thoughtful consideration of the judge deciding the case. . ." In re Marriage of West (Mont. 1983), 661 P.2d 1289, 1290, 40 St.Rep. 573, 575.

There are errors. Specifically, Paige was not employed at Sunburst, Montana, at the time he decided not to quit the union. However, neither this error nor other insignificant errors pinpointed by FIG affect the final result of the case.

5

As a whole, the findings are supported by substantial credible evidence and will not be overturned by this Court. Cameron v. Cameron (1978), 179 Mont. 219, 229, 587 P.2d 939, 945.

The trial judge did not refer to the stipulation entered into by the partners on December 3, 1984. That stipulation states that Paige was a member of FIG from 1970 through December 5, 1978. However, as Paige contends on appeal, the stipulation does not state that Paige was not a member of FIG between December 5, 1978 and July 31, 1980. Clearly, whether Paige remained a member during that time period is a factual dispute, resolution of which is integral to Paige's case. It was properly left for resolution by the trial judge.

The only specific requirement for membership in FIG was employment with FCC. "Pre-Incorporation Minutes" of October 9, 1969. Paige remained employed by FCC until July 1980. Therefore, we find no error in the trial judge's determination that Paige remained a member of FIG until that time.

FIG also objects to the trial judge's reliance on the National Labor Relations Act (Act) in deciding this case. The Act was referred to solely to help determine a primary issue of the case, whether Taurman and Paige were involuntarily terminated from FCC without allegations of misconduct. The Act provides that a wrongful discharge from employment occurs when one is discharged for supporting a union.

> It shall be an unfair labor practice for an employer - (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization.

29 U.S.C. § 158(a)(3).

6

Such a discharge is wrongful regardless the employer or location of employment. FCC did not have to be a party for this determination to be made as no adjudication or enforcement of a claim against FCC pursuant to the Act occurred. Rule 19(a), M.R.Civ.P. The Act was relied on solely to answer a question of state law pertinent to the issue raised - whether Taurman and Paige were involuntarily terminated from FCC absent allegations of misconduct?

The trial judge answered this question in the affirmative. Again, we find no error as there is substantial credible evidence to support that determination. Both individuals worked for FCC for a substantial number of years. Numerous people associated with FCC testified that neither individual was a problem employee. Their employment, or lack thereof, hinged completely on their willingness to disassociate with their union.

Finally, we find no error in the trial court's decision that pursuant to § 35-10-401(1), MCA, Taurman and Paige must be repaid their contributions into the partnership and receive their pro rata share of the assets of the partnership. Section 35-10-401, MCA, states at the outset that "[t]he rights and duties of the partners in relation to the partnership shall be determined, subject to any agreement between them, by the following rules." The agreement between the partners covers the voluntary termination of a partner's employment with FCC as well as his discharge for misconduct. It also covers involuntary termination caused by disability, death or retirement. However, there is nothing in the partnership agreement concerning the effect of a partner's involuntary termination from FCC absent misconduct. Numerous members of FIG, including its controller, testified that this contingency was not covered in FIG's partnership

7

agreement. Since the rights of partners of FIG who were involuntarily terminated from FCC without cause were not expressed in the agreement, § 35-10-401(1), MCA, controls.

> (1) Each partner shall be repaid his contributions whether by way of capital or advances to the partnership property and share equally in the profits and surplus remaining after all liabilities, including those to partners, are satisfied . . .

Taurman and Paige are entitled to receive their pro rata shares of the fair market value of the assets of FIG as of the date their employment with FCC terminated.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices